Index No. 15 CV 117 (AJN)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.PRO. 56**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Michael K. Gertzer*
*Tel:  (212) 356-2654*
*Matter #:  2015-005269*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

STATEMENT OF FACTS .......................................................................................... 2

LEGAL ARGUMENT .................................................................................................. 3

STANDARD FOR SUMMARY JUDGMENT ........................................................... 3

POINT I

 PLAINTIFF'S MONELL CLAIM SHOULD BE
DISMISSED BECAUSE THERE IS NO
EVIDENCE SUPPORTING THE EXISTENCE OF
AN UNLAWFUL POLICY ........................................................................ 4

 A. Department of Correction Policy Concerning
Sexual Abuse in 2013 and 2014 ........................................................ 6

 B. Plaintiff Cannot Show That The City Was
Deliberately Indifferent To Her Constitutional
Rights ............................................................................................... 9

  1. Hiring ........................................................................................10

  2. Training .....................................................................................10

  3. Supervision/Monitoring ............................................................12

  4. Discipline ..................................................................................13

 C. No Evidence That DOC Failed To Adequately
Investigate Alleged Incidents Of Excessive
Force, Assault, Sexual Exploitation And Sexual
Assault of Inmates ........................................................................... 14

 D. DOC Maintains Records of Inmate and
Correction Officer Movements, and the Lack
of Such Records Does Not Constitute a
Constitutional Violation................................................................... 15

 E. There is No Evidence in the Record of a Policy
of Inaction ....................................................................................... 15

**Page**

F.   There is No Evidence That Inmate Cells Are "Unbearably" Hot, or That Plaintiff's Cell Was Unbearably Hot ...................................................................................... 16

POINT II

PLAINTIFF'S NEGLIGENT HIRING CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO EVIDENCE THAT THE CITY WAS ON NOTICE THAT EITHER INDIVIDUAL DEFENDANT HAD A PROPENSITY TO ACT AS DESCRIBED BY PLAINTIFF IN THE COMPLAINT ........................................................... 18

POINT III

PLAINTIFF'S CLAIMS FOR ASSAULT AND BATTERY SHOULD BE DISMISSED TO THE EXTENT THEY ALSO SEEK RESPONDEAT SUPERIOR LIABILITY AGAINST THE CITY (PLAINTIFF'S 2ND, 13TH AND 21ST CLAIMS) ................................ 20

POINT IV

PLAINTIFF'S CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED (PLAINTIFF'S 3RD AND 14TH CLAIMS) ............................................................. 22

POINT V

PLAINTIFF'S CLAIMS FOR PRIMA FACIE TORT SHOULD BE DISMISSED (PLAINTIFF'S 11TH CLAIM) .......................................................... 24

POINT VI

PLAINTIFF'S CLAIM FOR CONDITIONS OF CONFINEMENT SHOULD BE DISMISSED ........................................ 24

CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Pages**

*Adorno v. Correctional Services Corp.*,
   312 F. Supp. 2d 505 (S.D.N.Y. 2004)....................................................................................21

*Amnesty Am. v. Town of W. Hartford*,
   361 F.3d 113 (2d Cir. 2004)............................................................................................12

*Bd. of the County Commissioners v. Brown*,
   520 U.S. 397 (1997).........................................................................................................5

*Belsky v. Lowenthal*,
   62 A.D. 2d 319 (1st Dept. 1978)....................................................................................24

*Benjamin v. Fraser*,
   343 F.3d 35 (2d Cir. 2003)..................................................................................16, 17, 25

*Black v. Town of Harrison*,
   2002 U.S. Dist. LEXIS 16597 (S.D.N.Y. Sept. 5, 2002).............................................22

*Bruno v. City of New York*,
   89 Civ. 6661 (KMW), 1992 U.S. Dist. LEXIS 4921 (S.D.N.Y. Apr. 15, 1992)......................6

*Bujnicki v. American Paving and Excavating, Inc.*,
   2004 U.S. Dist. LEXIS 8870 (W.D.N.Y. Mar. 30, 2004).............................................23

*C.C. v. Ithaca City School Dist.*,
   304 A.D.2d 955, 758 N.Y.S.2d 197 (3rd Dep't 2003)..................................................21

*Campoverde v. Sony Pictures Entm't*,
   2002 U.S. Dist. LEXIS 18347 (S.D.N.Y. Sept. 27, 2002).............................................22

*City of Canton v. Harris*,
   489 U.S. 378 (1989)...................................................................................................5, 10

*City of Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985)...................................................................................................5, 14

*Connick v. Thompson*,
   563 U.S. 51 (2011).......................................................................................................9, 11

*D'Amico v. Christie*,
   71 N.Y.2d 76 (1987).......................................................................................................19

*Doe v. City of New York*,
   09 Civ. 9895 (SAS), 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013)......................11

**Cases**                                                                                              **Pages**

*Druschke v. Banana Republic*,
    359 F.Supp. 2d 305, 2005 U.S. Dist. LEXIS 639 (S.D.N.Y. Jan. 14, 2005) ..........................22

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992)...................................................................................................................3

*EEOC v. Die Fliedermaus, L.L.C.*,
    77 F. Supp. 2d 460 (S.D.N.Y. 1999)......................................................................................23

*Ehrens v. Lutheran Church*,
    385 F.3d 232 (2d Cir. 2004)....................................................................................................19

*United States ex rel. Evergreen Pipeline Constr. Co. v. Meritt Meridian*
    *Constr. Corp.*,
    95 F.3d 153 (2d Cir. 1996).......................................................................................................24

*Farmer v. Brennan*,
    511 U.S. 825 (1994).................................................................................................................17

*Hansel v. Sheridan*,
    991 F. Supp. 69 (N.D.N.Y. 1998)...........................................................................................23

*Hazan v. The City of New York*,
    98 Civ. 1716 (LAP) 1999 U.S. Dist. LEXIS 10499 (S.D.N.Y. July 9, 1999) ........................22

*Jenkins v. City of New York*,
    91 Civ. 3539 (RLC), 1992 U.S. Dist. LEXIS 8279
    (S.D.N.Y. June 15, 1992)........................................................................................................18

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*,
    229 A.D.2d 159 (2nd Dept. 1997) ..........................................................................................19

*Koren v. Weihs*,
    190 A.D.2d 560, 593 N.Y.S.2d 222 (1st Dep't 1993) ...........................................................21

*Lauer v. City of New York*,
    240 A.D.2d 543, 659 N.Y.S. 2d 57 (2nd Dept. 1997),
    *app. denied*, 91 N.Y.2d 807 (1998) ......................................................................................22

*Lewis v. Casey*,
    518 U.S. 343 (1996)................................................................................................................16

*Lewis v. Washington*,
    95 Civ. 3789 (DLC), 1996 U.S. Dist. LEXIS 18173 (S.D.N.Y. Dec. 6, 1996) ...............16, 17

**Cases**                                                                                          **Pages**

*Mahmood v. City of New York*,
  No. 01 Civ. 5899 (SAS), 2003 U.S. Dist. LEXIS 7745 (S.D.N.Y. May 8,
  2003) ...................................................................................................................20

*Maldonado v. City of New* York,
  11 Civ. 3514 (RA), 2014 U.S. Dist. LEXIS 26239
  (S.D.N.Y. Feb. 26, 2014) ...................................................................................18

*Mark Nunez, et al. v. City of New York, et al.*,
  11 Civ. 5845 (LTS)(JCF) (SDNY) ...................................................................12

*Massey v. Starbucks Corp.*,
  No. 03 Civ. 7279 (SAS), 2004 U.S. Dist. LEXIS 12993
  (S.D.N.Y. July 12, 2004) ...................................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .............................................................................................3

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
  256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dep't 1998) ..........................................23

*McKenzie v, Dow Jones & Co.*,
  355 Fed. Appx. 533 (2d Cir. 2009)......................................................................24

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978)........................................................................................5, 14

*Moore v. The City of New York*,
  219 F. Supp. 2d 335 (E.D.N.Y. 2002) .................................................................23

*Murphy v. American Home Products Corp.*,
  58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) ...........................................................22

*N.X. v. Cabrini Med Ctr.*,
  739 N.Y.S.2d 348 (2002) .....................................................................................21

*N.X. v. Cabrini Med. Ctr.*,
  97 N.Y.2d 247 (2002) ..........................................................................................20

*National Nutritional Foods Ass'n v. Whelan*,
  492 F. Supp. 374 (S.D.N.Y. 1980) ......................................................................24

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986)...............................................................................................5

**Cases**                                                                   **Pages**

*Posr v. Killackey*,
01 Civ. 2320 (LTS)(GWG), 2003 U.S. Dist. LEXIS 12755
(S.D.N.Y. July 25, 2003) ...................................................................................4

*Reynolds v. Giuliani*,
506 F. 3d 183 .............................................................................................10, 11

*Ricciuti v. N.Y.C. Transit Authority*,
941 F.2d 119 (2d Cir. 1991)................................................................................5

*Ross v. Mitsui Fudosan, Inc.*,
2 F. Supp. 2d 522 (S.D.N.Y. 1998) ...................................................................21

*Russell v. Meat Farms, Inc.*,
160 A.D.2d 987, 554 N.Y.S.2d 709 (2d Dep't 1990) .........................................22

*Ruza v. Ruza*,
286 A.D. 767 (1st Dept. 1955).........................................................................24

*Sarus v. Rotundo*,
831 F.2d 397 (2d Cir. 1987)...............................................................................5

*Singh v. U.S. Security Associates, Inc.*,
03 Civ. 2059 FM), 2005 U.S. Dist. LEXIS 1407 (S.D.N.Y. Feb. 1, 2005) ...........23

*Smith v. Montefiore Med. Center-Health Servs. Div.*,
22 F. Supp. 2d 275 (S.D.N.Y. 1998)....................................................................6

*Stavitz v. City of New York*,
98 A.D.2d 529, 471 N.Y.S.2d 272 (1st Dep't 1984) .........................................20

*Sylvester v. The City of New York*,
385 F. Supp. 2d 431 (S.D.N.Y. 2005)................................................................22

*Tomka v. Seiler Corp.*,
66 F.3d 1295 (2d Cir. 1995)..............................................................................21

*Wahlstrom v. Metro-North Commuter R.R.*,
No. 96 Civ. 3589 (PKL), 1998 U.S. Dist. LEXIS 5666
(S.D.N.Y. Apr. 23, 1998)...................................................................................21

*Walker v. City of New York*,
974 F.2d 293 (2d Cir. 1992)..............................................................................10

**Cases**                                                                        **Pages**

*Wilson v. Diocese of N.Y. of the Episcopal Church*,
  No. 96 Civ. 2400 (SAS), 1998 U.S. Dist. LEXIS 2051
  (S.D.N.Y. Feb. 23, 1998) ............................................................................................21

*Wray v. City of New York*,
  490 F.3d 189 (2d Cir. 2007) ...................................................................................9, 10

*Young v. County of Fulton*,
  160 F.3d 899 (2d Cir. 1998) ..........................................................................................5

**Statutes**

Fed.R.Civ.Pro. 56 ..........................................................................................................1, 3

Penal Law §130.05 .............................................................................................................7

§ 1983 ........................................................................................1, 5, 9, 10, 23, 24

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Defendants City of New York ("City"), Pablo Porter and Emma Williams file this memorandum of law in support of their motion pursuant, to Fed.R.Civ.Pro. 56, seeking partial summary judgment.

On or about January 7, 2015, plaintiff filed her initial complaint, which she subsequently amended three times.  The most recent filed complaint, the Third Amended Complaint (the "Complaint"), was filed on October 6, 2016.  In it, plaintiff alleges 32 separate claims.[1]  By stipulation executed in August 11, 2017, and entered on August 17, 2017 (Dkt. No. 159), plaintiff agreed to dismiss her 4th, 5th, 6th, 7th, 8th, 9th, 15th, 16th, 17th, 18th, 19th, 20th, 22nd, 23rd, 24th, 25th, 26th, 27th, 28th, 29th and 30th claims.[2]  Defendants now seek to dismiss plaintiff's claims for: (1) *Monell* liability (Claim 32); (2) negligent hiring, training, supervision, discipline, staffing and retention (the "Negligent Hiring Claim," Claim 31); (3) assault and battery as they pertain to a claim of *respondeat superior* against the City (Claims 2, 13 and 21); (4) intentional infliction of emotional distress ("IIED," claims 3 and 14); (5) prima facie tort (Claim 11); and (6) conditions of confinement (part of Claim 1).[3]

---

[1] Rather than simply plead, for example, a single excessive force claim, plaintiff chose to assert a separate excessive force claim for each specified incident in the Complaint.  Plaintiff followed the same practice with respect to her claims for assault and battery and intentional infliction of emotional distress.

[2] Plaintiff also dismissed all remaining unidentified John Doe defendants.

[3] Thus, should defendant's motion be granted the remaining claims would and should be: (1) Section 1983 claims for excessive force, (claims 1 and 12); and (2) assault and battery against the individual defendants without a claim of *respondeat superior* (claims 2, 13 and 21).  To the extent plaintiff makes mention of "unlawful restraint" perhaps this is part of her excessive force claim.

As will be set forth below, because discovery yielded no evidence in support of the aforementioned claims, partial summary judgment is appropriate and these claims should be dismissed.

## STATEMENT OF FACTS

This action arises out of two separate incarcerations of plaintiff at the Rose M. Singer Center ("RMSC") from October 11-17, 2013 and from January 16-27, 2014.  Although defendants' own records pertaining to plaintiff reflect that her incarcerations were uneventful, plaintiff alleges that during these two brief periods she was repeatedly sexually and otherwise physically assaulted by various DOC staff including defendants Porter and Williams.[4]  Aside from plaintiff's own account, ███████████████████████████████████████████████, there is virtually no evidence in support of her claims.  Plaintiff never notified Department of Correction ("DOC") of any of these alleged incidents, so DOC was neither aware of nor investigated them (Doe. Dep Tr. at 256:10-14).  There is no DOC record corroborating plaintiff's

---

[4] While the details of plaintiff's underlying account are not very salient to this motion, defendants will provide a brief description of plaintiff's claims as background. Plaintiff alleges that after arriving from Criminal Court to RMSC on October 11, 2013, she was taken to a pen in Intake, and then sent to the RMSC clinic where she was sexually molested by her unidentified examining doctor.  After returning from the clinic to the Intake pen, she remained in the pen until all other occupants had been taken to their respective housing areas.  Now alone, she claims that defendants put her in a van and took her to a bathroom in an unused and isolated area of RMSC, where she was repeatedly sexually assaulted overnight, including with a flashlight and with pepper spray, until the morning of October 12.  Plaintiff also claims she was forced to drink soapy water during this incident.  The motivation for these attacks was apparently a combination of her looks and her purported status as a confidential informant for the Department of Homeland Security.  In January, 2014 plaintiff was briefly incarcerated again and alleges a number of assaults and incidents occurred, including claims that on several occasions she was taken to a room near the RMSC clinic by defendant Williams and, *inter alia*, repeatedly forced to place a comb in her vagina, compelled to perform oral sex upon a number of DOC staff, and forced again to drink soapy water.  Plaintiff does not allege that defendant Porter sexually assaulted her in January, 2014, and she asserts no claims against Porter arising from that incarceration.

allegations and such DOC documents that do mention plaintiff tend to contradict her account.[5] Plaintiff's allegations were investigated by the Bronx District Attorney's Office, who ultimately closed their investigation without issuing any indictments.

Despite extensive discovery, during which defendants produced over 10,000 pages of documents, no additional evidence has surfaced to support plaintiff's claims. While plaintiff's own sworn account of the alleged incidents precludes defendants from seeking summary judgment dismissing the entire case, many of her claims can be dismissed because of an absence of evidence in the record as set forth below.

## LEGAL ARGUMENT

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is warranted when, viewing the evidence in the light most favorable to the non-moving party, the Court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56; *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 457 (1992). While courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party in deciding whether a genuine issue of material fact exists, nevertheless, once a motion for summary judgment is made and supported, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). If the non-moving party's evidence "is merely colorable, or is not significantly probative," or if it consists

---

[5] Defendants are only seeking partial summary judgment. Nevertheless, the evidentiary record at trial will show that (1) contemporaneous logbooks reflect plaintiff traveled to the clinic and thence to her housing area in the company of other inmates, and was not separated from other inmates; ████████████████████████████████████████████████████████████████████████████████

only of "conjecture or surmise," summary judgment may be entered against that party. *Posr v.*

*Killackey*, 01 Civ. 2320 (LTS)(GWG), 2003 U.S. Dist. LEXIS 12755, at *7-8 (S.D.N.Y. July 25,

2003) (internal citations omitted).

### POINT I

### PLAINTIFF'S MONELL CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO EVIDENCE SUPPORTING THE EXISTENCE OF AN UNLAWFUL POLICY

Plaintiff's multifaceted *Monell* claim (Claim No. 32, ¶¶265-288) alleges the

following unlawful policies and practices caused plaintiff's claimed injuries:

1. A failure to hire, train, supervise, monitor and discipline DOC employees "with respect to the treatment and welfare of inmates, especially female pretrial detainees and inmates."  (Complaint at ¶271);

2. Failure to adequately investigate and remedy incidents of excessive force, assault, sexual exploitation and sexual assault of inmates; failing to disclose allegations made by inmates of sexual assault/exploitation by correction officers and medical personnel; failing to preserve these allegations in in accessible and available files; and failing to preserve and produce evidence probative of these allegations (Complaint at ¶271);

3. Failure to maintain "real-time, reliable, tamper-proof records of the location and movement of inmates" as well as correction officers (Complaint at ¶272-3);

4. A policy of inaction (Complaint at ¶274); and

5. The placement of inmates in cells that are unbearably hot (Complaint at ¶275).

4

In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must demonstrate that a policy or custom of the City of New York caused the deprivation of his or her federal or constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987). Under § 1983, a municipality may not be held liable solely on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694; *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 122 (2d Cir. 1991). Rather, plaintiff must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In fact, the identified municipal policy or practice must be the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694. Because plaintiff claims that DOC officers violated her rights pursuant to alleged municipal policy, a "rigorous standard[] of . . . causation must be applied" to avoid liability on the basis of *respondeat superior*. *Bd. of the County Commissioners v. Brown*, 520 U.S. 397, 405 (1997). Plaintiff cannot meet this standard based upon the record.

A single isolated incident alleged in a complaint, especially where the alleged incident involves only officials below the policymaking level, will not suffice to establish a municipal policy or custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985); *Ricciuti*, 941 F.2d at 123. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible" *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

Finally, conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a *Monell* claim, absent evidence to support such an allegation. *Young v. County of Fulton*, 160 F.3d 899, 903-04 (2d Cir. 1998) (affirming

dismissal of plaintiff's *Monell* claim because "her allegations failed to establish that she suffered any deprivation of her rights by reason of an official policy, custom, or practice" of the municipal defendants); *Smith v. Montefiore Med. Center-Health Servs. Div.*, 22 F. Supp. 2d 275, 283 (S.D.N.Y. 1998) (summary judgment for defendants on *Monell* claim because "bare allegations of . . . a policy or custom, without any supporting evidence, do not constitute . . . proof"); *cf. Bruno v. City of New York*, 89 Civ. 6661 (KMW), 1992 U.S. Dist. LEXIS 4921, at *6 (S.D.N.Y. Apr. 15, 1992) (plaintiff's conclusory allegation that "constitutional violations were pursuant to a custom, policy or practice of the City of New York Police Department" insufficient to state a *Monell* claim).

For each sub-part of plaintiff's *Monell* claim, there is (1) no evidence that such a policy exists; or (2) even if, *arguendo*, such a policy or practice exists, there is no evidence that it caused plaintiff's injuries; or (3) there is no evidence that the plaintiff suffered an injury as a result of the alleged occurrence.

## A.      Department of Correction Policy Concerning Sexual Abuse in 2013 and 2014

In 2013 and 2014 the City had extensive policies and practices designed to prevent and investigate sexual assaults or abuse of inmates by DOC staff.  These efforts include DOC Directive 5010R-A "Preventing Inmate Sexual Abuse" (annexed to the Declaration of Michael K. Gertzer, the "Gertzer Decl." as **Exhibit A**)[6], and Memorandum 01/08 entitled "Undue Familiarity and Prevention of Sexual Abuse of Inmates by Staff and Other Inmates" (annexed to the Gertzer Decl. as **Exhibit B**).  Directive 5010R-A sets forth in pertinent part:

---

[6] In 2016 Directive 5010R-A was significantly revised and expanded as Directive 5011, "Elimination of Sexual Abuse and Sexual Harassment" to ensure full compliance with the Prison Rape Elimination Act ("PREA").  Directive 5011 is annexed to the Gertzer Declaration as **Exhibit C**.

I.   POLICY

- The New York City Department of Correction (DOC) has a zero tolerance policy with regard to sexual abuse and sexual threats.   All sexual conduct, including sexual contact, is prohibited.  All allegations of sexual abuse and sexual threats shall be promptly and thoroughly investigated.

- Sexual conduct by staff with a person committed to the custody of the Department is a crime.

- Any sexual abuse of an inmate by a staff member will result in disciplinary action and will be prosecuted to the fullest extent of the law

- All staff are responsible for being alert to the signs of potential situations in which sexual abuse might occur and signs of victimization.

- Any staff member who has either knowledge or reasonable belief or receives an allegation that an incident or threat of sexual abuse has occurred and fails to report such information will be subject to disciplinary action.

Also in effect at the time of plaintiff's incarcerations at RMSC was DOC

Memorandum 01/08 which states in pertinent part:

- One of the worst offenses staff can commit is to engage in any sexual conduct with an inmate or make sexual threats.

- The Department of Correction has zero tolerance for sexual abuse of inmates.  No one is allowed to have sexual contact with any person who is incarcerated… (emphasis in original).

- In addition to Department policy, New York State Law clearly states that inmates are not able to give consent sexual conduct with an employee. (Penal Law §130.05)

- The personal consequences for an employee who has any sexual contact with an inmate or sexually threatens an inmate are severe.   Not only will that individual be terminated but they will also be arrested and criminally prosecuted.   In convicted they face imprisonment and registration as a sex offender.  The employee may also be

7

required to pay monetary damages to the inmate out of his
or her pocket.

                    *        *        *

- All allegations of sexual abuse and sexual threats will be
  investigated promptly and thoroughly

                    *        *        *

- Any employee who receives a report of inmate-on-inmate
  sexual abuse, must immediately notify their supervisor.  An
  employee who intentionally fails to report such information
  will be subject to disciplinary charges.

(emphasis in original).

The deposition testimony of former Chief of Department Evelyn Mirabal[7] reflects

that Directive 5010R-A and Memorandum 01/08 were implemented and followed during her

tenure at DOC.  Copies of Directive 5010R-A were "provided to the staff in a variety of way.

They can get a copy from security or programs or any of the officers.  When they take the

captain's exam they're provided with all the directives rules and regulations so they can study

it."  (Mirabal Dep. at 152:9-15, relevant portions of the deposition of Evelyn Mirabal are

annexed to the Gertzer Decl. as **Exhibit D**)  Officers are also trained to comply with the

Directive during their block training (Exhibit D at 152:16-21).  The directive is also available

online (Exhibit D at 152:22-23).  Correction officers are thus expected to be aware of this

Directive (Exhibit D at 153:2-6).

Mirabal testified that all allegations of sexual abuse are either forwarded to

DOC's Investigation Division or to the Department of Investigation Inspector General's Office

(Exhibit D at 114:8-11).  Employees who were found to have sexually abused an inmate "would

most likely be terminated… They might even go to jail depending upon the disposition of the

---

[7] Chief Mirabal was Chief of the Department from January 1, 2013 until her retirement on April
1, 2014.  Prior to that she had been warden of RMSC (Mirabal Dep. at 10:18-22, 19:20-20:9).

investigation" (Exhibit D at 115:14-22). Phone numbers for the Inspector General are "posted in every housing area and the front gate and everyplace else, the locker rooms where confidential reports like that could be made.  There are confidential phone numbers posted in every inmate housing area, in the intake area" (Exhibit D at 118:19-25, 163:18-25).  If an inmate makes an allegation of sexual abuse directly to the IG or to DOC ID, that allegation is kept confidential— others in the jail will not be advised (Exhibit D at 123:2-11).  Mirabal testified that allegations of sexual abuse were not frequent, but when they occurred they are, "treated very aggressively and everybody is taken into consideration."  (Exhibit D at 141:22-142:6).  While an investigation into an allegation of sexual abuse is ongoing, the subject officer is immediately transferred (Exhibit D at 157:3-18).  Other correction officers are unlikely to hinder the investigation because they too would be in jeopardy of criminal charges (Exhibit D at 165:20-166:24).

## B.   Plaintiff Cannot Show That The City Was Deliberately Indifferent To Her Constitutional Rights

The first section of plaintiff's *Monell* claim alleges that the City had a policy of failing to hire, train, supervise, monitor and discipline DOC employees with respect to the treatment and welfare of inmates, especially female inmates. A municipality's failure to train or supervise its employees may constitute a "policy" or "custom," but a plaintiff premising liability on a claim of failure to train or supervise must show that "the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact."  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007).   "Deliberate indifference," as the Supreme Court cautioned, "is a *stringent standard of fault*, requiring proof that a municipal actor disregarded a known obvious consequence of his action."   *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added).  Although a municipality may be liable under § 1983 for its policies or customs, only "[i]n limited circumstances [can] a local government's decision not to train certain

employees about their duty to avoid violating citizens' rights [] rise to the level of an official government policy for purposes of § 1983." *Id.* ("municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"). "Plaintiffs are required to submit evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights." *Reynolds v. Giuliani*, 506 F. 3d 183, 192 *citing Walker v. City of New York*, 974 F.2d 293, 297-298 (2d Cir. 1992). In short, the inquiry is whether the record reflects that the municipality's inaction was the result of a conscious choice and not mere negligence. *City of Canton v. Harris*, 489 U.S. at 389. As will be further discussed below, whether one looks at the DOC's hiring, training, supervision or discipline of its employees, the only conclusion is that either no unlawful policy exists and that plaintiff could not have been injured by an unlawful policy.

### 1. <u>Hiring</u>

Even if, *arguendo*, the City was deliberately indifferent in its hiring of DOC staff, which it was not, there is no evidence in the record of any unlawful behavior by Porter or Williams prior to their hiring by DOC.[8] Thus, because no lawful hiring policy could have prevented the individual defendants from being hired, the City's hiring policies could not have been the cause of plaintiff's injury.

### 2. <u>Training</u>

"[W]here (as here), a city has a training program, a plaintiff must . . . identify a *specific deficiency* in the city's training program and establish that that deficiency is *closely*

---

[8] Indeed, plaintiff has dismissed her state Negligent Hiring Claim against Williams.

*related to the ultimate injury*, such that it actually caused the constitutional deprivation." *Wray*, 490 F.3d at 196 (internal quotation marks and citations omitted; emphasis added). "[A] training program must be quite deficient in order for the deliberate indifference standard to be met:  the fact that training is imperfect or not in the precise form a plaintiff would prefer is insufficient to make such a showing." *Reynolds*, 506 F.3d at 193.

To succeed on a training "deliberate indifference" theory, a plaintiff must show that (i) "city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," and notwithstanding such notice, (ii) "the policymakers choose to retain that program." *Connick*, 563 U.S. at 61.  With respect to claims alleging failure to train, it is "ordinarily necessary" to establish a "pattern of similar constitutional violations by untrained employees." *Id.* at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights").

There is no evidence in the record that DOC was deliberately indifferent in the way it trained its employees concerning sexual assaults or abuse of inmates.  Even if this were not the case, the City could not have been deliberately indifferent because the conduct alleged in the Complaint is so manifestly heinous and unlawful that even in the absence of a training program, any DOC correction officer would have been aware that such conduct would have been illegal.  *See e.g. Doe v. City of New York*, 09 Civ. 9895 (SAS), 2013 U.S. Dist. LEXIS 30010, at *14-15 (S.D.N.Y. Mar. 4, 2013)(in action arising from plaintiff's rape by a police officer, plaintiff's *Monell* claim alleging, *inter alia*, failure to train dismissed: "It goes without saying that a police officer is prohibited from sexually assaulting an intoxicated woman…").  Put

11

another way, no deficiency in defendants' training program could have reasonably led to plaintiff's alleged injuries.

### 3.  <u>Supervision/Monitoring</u>

In order to show that the City failed to properly supervise its employees, plaintiff must show that "policymakers were knowingly and deliberately indifferent to the possibility that its [employees] were wont to violate the constitutional rights of [inmates]." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004).  Thus, plaintiff must show "the need for more or better supervision to protect against constitutional violations was obvious" and that no meaningful attempt to curb the unconstitutional conduct was made.  *Id.*

There is no evidence that the City was deliberately indifferent in the way it supervised its correction officers.  DOC jails operate under a chain of command from correction officers up to the warden.  Each officer has a supervisor for their tour (Williams Dep. at 215:6-16, relevant excerpts of the Williams Dep. are annexed to the Gertzer Decl. as **Exhibit E**, Porter Dep. at 14:11-21, relevant portions of the Porter Dep. are annexed to the Gertzer Decl. as **Exhibit F**).  Movements of staff and inmates are recorded in various logbooks maintained throughout the facility (Exhibit E at 30:6-9, 87:2-90:18, 134:14-138:20, 158:21-167:14).  Moreover, video cameras are placed throughout the jails, a fact that correction officers are well aware (Exhibit F at 74:3-20).[9]  There is no evidence in the record that the City was aware that the need for better supervision was obvious, and that no meaningful effort to curb unconstitutional conduct was made.

---

[9] Because plaintiff never told anyone at DOC that she had been sexually assaulted, no RMSC video, which could have either corroborated or disproved her account, was preserved.  Moreover, because of the consent decree entered on October 21, 2015, in *Mark Nunez, et al. v. City of New York, et al.*, 11 Civ. 5845 (LTS)(JCF) (SDNY) (Dkt. No. 249 at pp. 28-31), camera coverage is being greatly expanded as 7,800 additional cameras will be installed by February 28, 2018.

Indeed, the record shows that DOC was concerned about the possibility of sexual abuse or assault of inmates and enlisted an outside vendor, the Moss Group, to conduct an audit of DOC to ascertain what steps DOC could take to ensure compliance with the Prison Rape Elimination Act ("PREA").

### 4.  Discipline

There is no evidence that DOC failed to properly discipline its officers.   As discussed above, all allegations of sexual abuse or assault are investigated either by DOC ID, or by DOI.   Any substantiated allegations could, and likely would, result in termination and criminal charges.

Even if, *arguendo*, the City was deliberately indifferent there is no evidence that such a policy or practice injured plaintiff.  There is no record of any allegation of sexual abuse or assault made against defendant Williams, the sole named defendant concerning plaintiff's January, 2014, allegations, so no disciplinary policy would have been effective against her (and thus any *Monell* claim concerning failure to discipline in January, 2014, must also fail). Indeed plaintiff herself dismissed Williams from her state Negligent Hiring claim, presumably for this reason.



.[10]  Again, even if plaintiff's account is taken as true,

[10] 

13

there is no evidence that Porter was previously insufficiently disciplined, or that any failure thereof was the cause of plaintiff's injuries.   Even if this investigation substantiated the allegations against Porter, it would not have proven that an unlawful policy existed, because a single incident is not sufficient to prove a policy or practice exists.   *Tuttle*, 471 U.S. at 824.

**C.      No Evidence That DOC Failed To Adequately Investigate Alleged Incidents Of Excessive Force, Assault, Sexual Exploitation And Sexual Assault of Inmates**

As discussed in Point I(A)(4), supra, there is no evidence in the record that DOC fails to investigate alleged incidents of sexual assault or excessive force.   In fact, the record shows the precise opposite.   DOC investigates all allegations of sexual abuse.   (Exhibit D. at 114:8-11)   In fact, in discovery defendants turned over 4000 pages of prior investigations of sexual assaults at RMSC during the period 2011-2016.

Even if it were true that DOC's investigations were inadequate, plaintiff cannot prevail on this portion of her claim because there is no record that plaintiff told anyone at DOC that these alleged assaults had occurred (███████████████████████████████████████████████████████████████████████████████████).   DOC was never put on notice about plaintiff's allegations and no investigation was commenced.[11]   Thus, the alleged policy could not have been the driving force behind the alleged constitutional deprivation *Monell*, 436 U.S. at 694.

████████████████████████████████████████████████████████████████████████████

[11]   The Bronx District Attorney's Office conducted its own investigation into plaintiff's allegations and issued no indictments.

14

**D.     DOC Maintains Records of Inmate and Correction Officer  Movements, and the Lack of Such Records Does Not Constitute a Constitutional Violation**

The third portion of plaintiff's *Monell* claim alleges that the City fails to maintain "real-time, reliable, and tamper-proof records of the location and movements of correction officers, and their interaction with inmates, especially female pretrial detainees and female inmates" (Complaint at ¶272-273).   In fact, DOC does in fact maintain numerous handwritten and computerized records of the movements of staff and inmates (Exhibit E at 30:6-9, 87:2-90:18, 134:14-138:20, 158:21-167:14).   As plaintiff is well aware, defendants turned over numerous logbooks and rosters in discovery that record the comings and goings of both DOC staff and inmates, including plaintiff on the dates in question.[12]   There is no evidence in the record that any records were falsified or tampered with.

There is no evidence in the record that such a practice exists, and even if there were, there is no evidence that such a policy or practice led to plaintiff's alleged injuries. Nor has plaintiff identified other examples of this practice, aside from her own incident.    Finally defendants submit that a failure to maintain records does not constitute a violation of one's constitutional rights.

**E.     There is No Evidence in the Record of a Policy of Inaction**

This portion of plaintiff's *Monell* claim appears to be essentially identical to plaintiff's allegation that the City failed to properly hire, train supervise, monitor and discipline its employees.  Thus, the Court is respectfully referred to Point I(A), *supra*.

---

[12] Including for Intake, the RMSC Clinic, and plaintiff's housing area.

15

**F.   There is No Evidence That Inmate Cells Are "Unbearably" Hot, or That Plaintiff's Cell Was Unbearably Hot**

Plaintiff alleges that on one occasion she was placed in a cell that was too hot (Complaint at ¶¶83-86, 275).   Although this claim should fail for the reason that plaintiff essentially purports to base this claim upon a single instance, her own,[13] plaintiff also cannot show that (1) her cell was too hot, or (2) that she suffered any injury as a result of the allegedly hot cell.[14]

As essentially a conditions of confinement claim,[15] plaintiff's claim is properly brought under the Due Process Clause of the Fourteenth Amendment.   In order to prevail on such a claim, plaintiff must first show that she sustained actual, substantial and significant injuries as a result of the conditions of her confinement.   *See Benjamin v. Fraser*, 343 F.3d 35, 51 (2d Cir. 2003) ("To establish the deprivation of a basic human need… [plaintiff] must show 'actual or imminent harm'") (*quoting Lewis v. Casey*, 518 U.S. 343, 350 (1996)); *Lewis v. Washington*, 95 Civ. 3789 (DLC), 1996 U.S. Dist. LEXIS 18173, at *9 (S.D.N.Y. Dec. 6, 1996) ("it is clear that plaintiff must show he sustained a significant injury as a result of defendant's conduct in order to prevail under the Fourteenth Amendment's Due Process Clause").

---

[13] Plaintiff's complaint mentions a second instance ¶275, where a hot cell allegedly led to the death of another inmate at another DOC jail, not RMSC, on or about February 14-15, 2014, or after plaintiff's second incarceration.  One correction officer was indicted and ultimately pleaded guilty to falsifying business records.   She was terminated from DOC, which is additional evidence that DOC investigates/disciplines officers who have been alleged to have engaged in abuse of inmates.

[14] Notably, plaintiff voluntarily dismissed the underlying claims in her complaint (Claims 22-24, Complaint at ¶¶214-227).

[15] Plaintiff does not allege a separate conditions of confinement claim, nor did she ever identify any defendant allegedly responsible for the hot cell.

Second, plaintiff must demonstrate a culpable state of mind on the part of defendants.  In order to make such a showing, a plaintiff must meet the "subjective" test that was laid out by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer*, the Supreme Court held that a prisoner who brought a claim regarding conditions of confinement under the Eighth Amendment would prevail only if they demonstrated that defendant "disregards a risk of harm of which he is aware."  *Brennan*, 511 U.S. at 836-67 (1990).[16]

There is no evidence in the record of the temperature of plaintiff's cell, or any other cell, on the dates of her incarceration.  Nor is there any evidence that plaintiff suffered an actual injury as a result of exposure to this allegedly hot cell.  *See Benjamin v. Fraser*, 343 F.3d 35, 51 (2d. Cir. 2003)(citations omitted); *Lewis v. Washington*, 1996 U.S. Dist. LEXIS 18173, at *9 ("it is clear that plaintiff must show he sustained a significant injury as a result of defendant's conduct in order to prevail under the Fourteenth Amendment's Due Process Clause").[17]  Plaintiff did not even identify any defendants responsible for this alleged hot cell.

Even if plaintiff can show that she suffered a significant injury from a hot cell, she cannot show that defendants had a culpable state of mind.  There is no evidence in the record that

---

[16]  Prior to *Caiozzo*, case law in this Circuit suggested that a plaintiff could prevail simply by showing that a defendant failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *See e.g. Liscio* at 275 -276.  The Second Circuit explicitly rejects this standard in *Caiozzo* and applies a higher, "subjective" standard.  *Caiozzo*, 581 F.3d at 72.

[17]  In *Lewis v. Washington*, the Court noted that although plaintiff alleged, "quite understandably, that he suffered 'discomfort and pain,' he fail[ed] to establish that his medical condition worsened as a result of his exposure to the cold or that he sustained a significant injury as a result of defendant's conduct."  *Lewis*, 1996 U.S. Dist. LEXIS 18173, at *10.  As such, defendant's failure to provide plaintiff, a pre-trial detainee, with warm clothing during a trip to the hospital did not implicate plaintiff's constitutional rights, and summary judgment was properly granted to defendant.  *Id*. at *11.

the City, or any DOC staff, was aware of the existence of overly-hot cells, but disregarded the risk.  Thus, this section of plaintiff's *Monell* claim should be dismissed.

**POINT II**

**PLAINTIFF'S NEGLIGENT HIRING CLAIM SHOULD BE DISMISSED BECAUSE THERE IS NO EVIDENCE THAT THE CITY WAS ON NOTICE THAT EITHER INDIVIDUAL DEFENDANT HAD A PROPENSITY TO ACT AS DESCRIBED BY PLAINTIFF IN THE COMPLAINT**

Plaintiff's Negligent Hiring Claim (Claim No. 31, ¶¶259-264) should also be dismissed because there is no evidence in the record supporting these claims.[18]

As a preliminary matter, New York State law frowns upon this extension of common law negligence as against public policy.  *See Maldonado v. City of New* York, 11 Civ. 3514 (RA), 2014 U.S. Dist. LEXIS 26239, at *40-41 (S.D.N.Y. Feb. 26, 2014), citing *Jenkins v. City of New York*, 91 Civ. 3539 (RLC), 1992 U.S. Dist. LEXIS 8279 (S.D.N.Y. June 15, 1992)(dismissing claims for "negligent investigation, negligent training, negligent supervision, negligent disciplining, negligent retention of employees and negligent provision of incorrect information" dismissed as barred by New York State policy as a plaintiff cannot evade established requirements for a cause of action by inventing new theories of negligence).

Even if this Court determines negligent hiring is a cognizable claim under New York law, this claim should still be dismissed.  Under New York law in order to prove a claim of negligent hiring, in addition to the standard elements of negligence, a plaintiff must show (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which

---

[18] Plaintiff has dismissed the claim as it pertains to defendant Williams.

caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels. *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citing *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987) and *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161 (2nd Dept. 1997)).

       Plaintiff cannot satisfy this test because even if a jury finds that the individual defendants used excessive force against her, or otherwise violated her rights, there is no evidence in the record to show that the City of New York knew or should have known, that any of the individual defendants would have had a propensity for the alleged conduct that caused plaintiff's purported injuries.

       It is expected that plaintiff will cite to ███████████████████████ that predates plaintiff's October, 2013 incarceration, as well as Porter's prior uses of force incidents. ███████████████████ has already been discussed, but Porter's prior uses of force would also not have served to put the City on notice. In discovery defendants produced 21 of Porter's prior use of force files.[19] In 20 of the 21 incidents the only force he used was either control holds or pepper spray. ████████████████████████████████████████████████████████████████████████████████████████████████████████ The closing investigation reports for these incidents are annexed to the Gertzer Declaration as **Exhibit J**. Defendants submit that these incidents are insufficient to satisfy plaintiff's burden.

---

[19] Porter frequently supervised probe teams which accounts for the number of incidents. All use of force incidents at DOC jails are investigated, even if the force used was innocuous.

**POINT III**

**PLAINTIFF'S CLAIMS FOR ASSAULT AND BATTERY SHOULD BE DISMISSED TO THE EXTENT THEY ALSO SEEK RESPONDEAT SUPERIOR LIABILITY AGAINST THE CITY (PLAINTIFF'S 2ND, 13TH AND 21ST CLAIMS)**

Plaintiff has three remaining claims for assault and battery arising from her incarceration at RMSC.  To the extent these claims also seek to hold the City liable under the theory of *respondeat superior* (Complaint at ¶112, 170 and 21), these claims should be dismissed because the defendant officers could not have been acting within the scope of their employment when the acts alleged in the Complaint occurred.

*Respondeat superior* liability requires an individual to have acted within the scope of his employment when committing the culpable conduct.  *Massey v. Starbucks Corp*., No. 03 Civ. 7279 (SAS), 2004 U.S. Dist. LEXIS 12993, at *24 (S.D.N.Y. July 12, 2004).  "Under the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious acts of his employees only if those acts were committed in furtherance of the employer's business and within the scope of employment."  *N.X. v. Cabrini Med. Ctr*., 97 N.Y.2d 247, 251 (2002).  Courts have held that "an employee's actions are not within the scope of employment unless the purpose in performing such actions is to further the employer's interest, or to carry out duties incumbent upon the employee in furthering the employers' business.  Thus, where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment."  *Mahmood v. City of New York*, No. 01 Civ. 5899 (SAS), 2003 U.S. Dist. LEXIS 7745, at *8 (S.D.N.Y. May 8, 2003) (citing *Stavitz v. City of New York*, 98 A.D.2d 529, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)).

Notably, "New York courts have consistently held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Adorno v. Correctional Services Corp.*, 312 F. Supp. 2d 505, 517 (S.D.N.Y. 2004) (citing *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)). Thus, New York courts "have repeatedly found no vicarious liability for claims involving sexual misconduct." *Adorno*, 312 F. Supp. 2d at 517; *see also, C.C. v. Ithaca City School Dist.*, 304 A.D.2d 955, 956, 758 N.Y.S.2d 197 (3rd Dep't 2003) (holding sexual assault by a teacher upon a student was a "clear departure from the scope of employment, committed solely for personal reasons, and unrelated to the furtherance of the employer's business"); *N.X. v. Cabrini Med Ctr.*, 739 N.Y.S.2d 348 (2002) (sexual assault perpetrated by hospital employee was not in furtherance of hospital's business and did not support *respondeat superior* liability); *Wilson v. Diocese of N.Y. of the Episcopal Church*, No. 96 Civ. 2400 (SAS), 1998 U.S. Dist. LEXIS 2051, at *14-16 (S.D.N.Y. Feb. 23, 1998) (sexual assault by a priest was not in furtherance of business of church or Diocese and did not support claim for *respondeat superior* liability); *Koren v. Weihs*, 190 A.D.2d 560, 560-61, 593 N.Y.S.2d 222 (1st Dep't 1993) (no vicarious liability against hospital where psychotherapist engaged in sex therapy with a patient). *Wahlstrom v. Metro-North Commuter R.R.*, No. 96 Civ. 3589 (PKL), 1998 U.S. Dist. LEXIS 5666, at *8 (S.D.N.Y. Apr. 23, 1998) (finding sexual assault outside the scope of employment) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1298 (2d Cir. 1995)); *Dia CC v. Ithaca City Sch. Dist.*, 304 A.D.2d 955, 956, 758 N.Y.S.2d 197 (3rd Dep't 2003) (same).

The thoroughly illegal nature of the conduct alleged by plaintiff renders it impossible for the individual defendants to have been acting within the scope of their employment, thus this claim should be dismissed.

**POINT IV**

**PLAINTIFF'S CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED (PLAINTIFF'S 3RD AND 14TH CLAIMS)**

Plaintiff has alleged two claims for intentional infliction of emotional distress ("IIED").  Both should be dismissed.

As preliminary matter plaintiff's claims should be dismissed as against the City, because public policy prohibits recovery for claims of IIED against the City of New York. *Hazan v. The City of New York*, 98 Civ. 1716 (LAP) 1999 U.S. Dist. LEXIS 10499, *23 (S.D.N.Y. July 9, 1999) (citing *Lauer v. City of New York*, 240 A.D.2d 543, 544, 659 N.Y.S. 2d 57, 58 (2nd Dept. 1997), *app. denied*, 91 N.Y.2d 807 (1998)); *Sylvester v. The City of New York*, 385 F. Supp. 2d 431, 441 (S.D.N.Y. 2005).

In order to state a claim for IIED, a plaintiff must allege conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." A plaintiff cannot maintain a claim for IIED "where, as here, the conduct for the underlying claim may be redressed by way of traditional tort remedies such as battery, false arrest, and malicious prosecution." *Druschke v. Banana Republic*, 359 F.Supp. 2d 305, 2005 U.S. Dist. LEXIS 639, at *18 (S.D.N.Y. Jan. 14, 2005) (quoting *Campoverde v. Sony Pictures Entm't*, 2002 U.S. Dist. LEXIS 18347, *37-38 (S.D.N.Y. Sept. 27, 2002)(quoting *Black v. Town of Harrison*, 2002 U.S. Dist. LEXIS 16597, *13-14 (S.D.N.Y. Sept. 5, 2002))).   *See also Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236 (1983); *Russell v. Meat Farms, Inc.*, 160 A.D.2d 987, 554 N.Y.S.2d 709 (2d Dep't 1990) (citations omitted).  "[I]n New York, 'intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort,'

when traditional tort remedies are unavailable." *Moore v. The City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing *EEOC v. Die Fliedermaus, L.L.C.*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999)(quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1ˢᵗ Dep't 1998)).  "Accordingly, 'no intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'" *Moore v. The City of New York*, 219 F. Supp. at 339 (quoting *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)).  Plaintiff's surviving claims under §1983 for excessive force, as well as her assault and battery claims, provide sufficient basis for recovery.

Finally, even if the plaintiff was able to demonstrate that any of the defendants' conduct was outrageous enough to constitute IIED, plaintiff's failure to proffer any objective contemporaneous medical evidence in support of their claims that she suffers from "extreme emotional distress" mandates dismissal of her IIED claim.  *See Singh v. U.S. Security Associates, Inc.*, 03 Civ. 2059 FM), 2005 U.S. Dist. LEXIS 1407, at * 43 (S.D.N.Y. Feb. 1, 2005) (Maas, M.J.) (citing *Bujnicki v. American Paving and Excavating, Inc.*, 2004 U.S. Dist. LEXIS 8870, *43-44 (W.D.N.Y. Mar. 30, 2004)(subjective complaints of extreme emotional distress insufficient to defeat summary judgment).  ██████████████████████████████████ ███████████████████████ █ ████████████████████████████████████ ████████████████████████████████████████████████████████ .

---

[20] ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████

## POINT V

### PLAINTIFF'S CLAIMS FOR PRIMA FACIE TORT SHOULD BE DISMISSED (PLAINTIFF'S 11TH CLAIM)

Plaintiff also brings two claims asserting prima facie tort.  These claims should be dismissed as superfluous, unnecessary and a misuse of the claim.  Prima facie tort is not intended to be a "catchall alternative for every cause of action which cannot stand on its legs."  *Belsky v. Lowenthal*, 62 A.D. 2d 319, 323 (1st Dept. 1978).

The claim of prima facie tort contains four elements: "(1) intentional infliction of harm; (2) without excuse or justification; (3) resulting in special damages; (4) by an act that would otherwise be lawful."  *McKenzie v, Dow Jones & Co.*, 355 Fed. Appx. 533, at *7 (2d Cir. 2009), *quoting United States ex rel. Evergreen Pipeline Constr. Co. v. Meritt Meridian Constr. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996).  Thus, in order for plaintiff to prevail on this claim, the act in question that caused plaintiff's alleged injuries would have had to have been caused by "an act that would otherwise be lawful."   Here, defendants alleged actions of sexual assault would obviously be illegal-thus plaintiff cannot satisfy the requirements of the claim.  "Where the complaint relies 'only on specific and tortious acts, the remedy is not in prima facie tort.'" *National Nutritional Foods Ass'n v. Whelan*, 492 F. Supp. 374, 383 (S.D.N.Y. 1980) *citing Ruza v. Ruza*, 286 A.D. 767 (1st Dept. 1955).  Prima facie tort is simply not applicable to the facts alleged by plaintiff, and thus this claim should be dismissed.

## POINT VI

### PLAINTIFF'S CLAIM FOR CONDITIONS OF CONFINEMENT SHOULD BE DISMISSED

For the reasons set forth in Point (I)(F), to the extent plaintiff asserts a Section 1983 conditions of confinement claim against the individual defendants (Complaint at ¶104),

such claim should be dismissed.  There is no evidence in the record that plaintiff suffered a "significant injury" as a result of allegedly ingesting soapy water, or being placed in a cell that was allegedly unsanitary.  See *Benjamin*, 343 F.3d at 51.

## CONCLUSION

Because of the foregoing, it is respectfully requested that this Court grant defendants' motion together with such other and further relief as this Court deems to be proper.

Dated:        New York, New York
              September 8, 2017

                                    ZACHARY W. CARTER
                                    Corporation Counsel of the
                                      City of New York
                                    *Attorney for Defendants City of New York,*
                                    *Department of Correction, Pablo Porter and Emma*
                                    *Williams*
                                    100 Church Street
                                    New York, New York 10007
                                    (212) 356-2654


                                    By:  _____/s/_____
                                            Michael K. Gertzer
                                            Senior Counsel