UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Jane Doe,

          Plaintiff,

—v—

The City of New York et al.,

          Defendants.

15-CV-0117 (AJN)

MEMORANDUM OPINION
AND ORDER

ALISON J. NATHAN, District Judge:

In this civil rights action, the Plaintiff, Jane Doe, brings claims against the City of New York and its employees who worked for the New York Department of Corrections stemming from a series of sexual assaults she allegedly suffered in 2013 and 2014. Defendants moved for partial summary judgment. For the reasons that follow, that motion is granted in part and denied in part.

I.    **Background**

The Court assumes the parties' familiarity with the facts of this case. The Plaintiff, Jane Doe, was incarcerated at the Rose M. Singer Center ("RMSC") on Riker's Island from October 11-17, 2013 and from January 16-27, 2014. D. 56.1, Dkt. No. 161, ¶ 1; P. 56.1, Dkt. No. 171, ¶ 1. Doe alleges that on October 11, 2013, she was removed from the intake area by Defendant Captain Pablo Porter, Defendant Correction Officer ("CO") Emma Williams, and an unidentified male CO, and taken to an isolated room in an abandoned area of the facility. Third Amended Complaint ("TAC"), Dkt. No. 93, ¶¶ 35-37. There, she was stripped of her clothing and handcuffed kneeling to a toilet fixture. TAC ¶¶ 37-38. Over the next several hours, Doe states

1

that Porter and two unidentified male COs sexually assaulted her multiple times, including penetrating her vaginally and anally with a flashlight, raping and sodomizing her, forcing her to perform oral sex, and forcing her to rub one CO's penis with her hands. TAC ¶¶ 39-50; Jane Doe Tr., Sealed Ex. A to Resnick Decl., Dkt. No. 170, at 142:3-200:20. She also states that she was forced to drink soapy liquid, denied water, and was pepper sprayed on her anus and vagina. TAC ¶¶ 45-46, 49-50, 52, 54-55; Jane Doe Tr. 168:10-169:14, 178: 20-179:4, 187:17-192:19. On or about October 12, 2013, Defendant Williams removed Doe from the abandoned area and took her to the RMSC housing unit and told Doe "This never happened" and "If it is being heard upstairs, things are going to be worse." TAC ¶¶ 56-59, Jane Doe Tr. 205:17-206:15.

Doe was released from Rikers on October 17, 2013 with the help of an agent of the Department of Homeland Security for whom she had worked in an undercover capacity in a case unrelated to her arrest. Jane Doe Tr. 57:1-60:25. She was remanded to RMSC on January 16, 2014 on a new charge. TAC ¶¶ 72-73; D. 56.1 ¶ 1; Pl. 56.1 ¶ 1. Over the next several days, Doe states that she was subjected to multiple instances of sexual and physical assault by Defendant Williams and two unidentified male COs. TAC ¶¶ 76-81.

On January 8, 2015, the Plaintiff filed this case under seal in the Southern District of New York. *See* Sealing Order, Dkt. No. 1. On October 17, 2016, the Plaintiff filed her Third Amended Complaint, which is the operative complaint in the case. *See* TAC. On September 8, 2017, the Defendants filed the motion for partial summary judgment that is the subject of this Memorandum and Order. *See* Motion, Dkt. No. 160.

## II.  Legal Standard

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is appropriate when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

III. Discussion

    A. **Summary Judgment Is Granted on Claims Abandoned by Plaintiffs**

3

In her memorandum in opposition to summary judgment, Plaintiff states that she is not pursuing her claims for assault and battery against the City under a theory of *respondeat superior* (Claims 2, 13, and 21), *prima facie* tort (Claim 22), conditions of confinement regarding an overheated cell (part of Claim 32), or adequacy of the City's training of correction officers as to sexual safety (part of Claim 32). Pl. Brief in Opp. ("Opp."), Dkt. No. 169, at 1 n.1. Accordingly, Defendants' motion for summary judgment is granted on Claims 2, 13, 21, 22, and 32 to the extent it challenges her conditions of confinement in a hot cell and challenges the City's training of correction officers as to sexual safety.

### B. Plaintiff's *Monell* Claim Survives as to Inadequate Investigation and Discipline of Municipal Employees

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In other words, "municipalities are 'responsible only for their own illegal acts,' and cannot be held 'vicariously liable under § 1983 for their employees' actions.'" *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). To sustain a *Monell* claim, a plaintiff "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Id.* (quoting *Connick*, 563 U.S. at 60).

A municipal policy may be "pronounced or tacit and reflected in either action or inaction." *Id.* at 334. With respect to the latter category, a "city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution." *Id.* (quoting *Connick*, 563 U.S. at 61-62). Thus, "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city policy or custom that is

4

actionable under § 1983.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) (quoting *City of Canton*, 489 U.S. at 388). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996). Indeed, failure to "carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988). Deliberate indifference may be proven through "proof of repeated complaints of civil rights violations" if "the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995). Such claims put the City on notice even if the complaints are ultimately not meritorious. *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986). "Deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was 'contrary to the practice of most . . . departments' and was 'particularly dangerous' because it presented an unusually high risk that constitutional rights would be violated." *Vann*, 72 F.3d at 1049.

The Plaintiff's remaining theories of *Monell* liability state that the City is liable for its inadequate hiring, monitoring, investigating, and disciplining of Department of Correction staff. The Court concludes that the Defendants are entitled to summary judgment on the Plaintiff's *Monell* claim concerning inadequate hiring and monitoring but that summary judgment is not appropriate on the Plaintiff's *Monell* claim concerning inadequate investigating and disciplining.

1. **A Reasonable Juror Could Find for the Plaintiff Regarding Inadequate Investigation and Discipline**

The Plaintiff alleges that the City of New York was deliberately indifferent in the investigation and discipline of Department of Correction staff with respect to sexual assault of female inmates. Drawing all inferences in favor of the non-moving party, the Court concludes

that a reasonable juror could find that the City exhibited deliberate indifference in its investigation and discipline practices and that this deliberate indifference caused Doe to be sexually assaulted at RMSC.

The Plaintiff has adduced significant evidence suggesting that there was a policy of deliberate indifference to physical and sexual assault of inmates at RMSC. This evidence includes deposition testimony from several individuals stating that despite the City's policy proscribing undue familiarity with inmates, guards regularly fraternized with women incarcerated at RMSC, including removing their shirts to play sports while the women were required to watch. *See* Morgan Tr., Dkt. No. 170-4, at 56:17-57:20; Norton Tr., Dkt. No. 170-5, at 63:23-67:16. One inmate testified that she regularly observed Defendant Porter fraternizing with women in one of the CO observation posts. Morgan Tr. at 56:16-57:15. The Plaintiff has also provided testimony of a former inmate who repeatedly witnessed women have sex with guards, including a woman trading sexual favors for cigarettes. Morgan Tr. at 43:3-44:19, 50:18-24, 52:11-21.

In addition, the Plaintiff has provided an expert report by Timothy Ryan ("the Ryan Report"), dated November 3, 2016, in which a warden with over 44 years of experience analyzes thousands of pages of documents related to New York's customs, policies, and practices and concludes that the City's policies were inadequate. First, the Ryan Report presents the Department of Justice's statistics demonstrating that RMSC inmates report a level of sexual assault more than double the national average. Ryan Report, Dkt. No. 170-13, at 26-27. This is so despite the fact that such abuse is likely underreported. Ryan Report at 27. The Ryan Report further states that the City had provided few reporting methods and that those that existed failed, including telephone reporting that did not work and was not confidential despite an industry

standard to the contrary, Ryan Report at 38-40; a strong "code of silence" that caused corrections staff to believe they would not be held accountable for their behavior and that other officers would not report them, Ryan Report at 37-38; a lack of trust between inmates and staff, Ryan Report at 38-40; and frequent retaliation by COs against inmates who reported sexual abuse, Ryan Report at 5-8, 40-41. The Ryan Report further outlines deficiencies in the City's internal investigation of allegations of reported sexual assault, which results in the vast majority of such claims being deemed "not substantiated" or "unfounded." Ryan Report at 26-27, 42-44. Despite having a reported rate of sexual assault twice the national average, New York's Department of Corrections investigations concluded that sexual assault reports were substantiated between one-third and one-half as often as the national average. Ryan Report at 42-44. Between 2011 and 2013, the City found no allegations were substantiated against COs, which the Ryan Report deems "just not credible." Ryan Report at 44. The Ryan Report attributes these faulty findings to investigators' quick conclusions that the assaults could not have occurred exactly as described and thus did not occur at all. Ryan Report at 43-44. In addition, COs and other staff were unwilling to be witnesses in investigations and that the City tolerated such behavior despite Department of Corrections rules allowing the termination of staff who refuse to cooperate with investigations. Ryan Report at 43.

Plaintiff has also provided evidence that this deliberate indifference was the cause of her sexual assault. For example, she has recounted several comments by the Defendants during and after her various assaults suggesting that they believed they would never be subjected to punishment for their actions. *See, e.g.*, TAC ¶ 73 ("If you say anything to anybody, nobody will believe you. . . . Don't cry. No one is going to come for you and I don't want to bring attention to our group."); Jane Doe Tr. at 206: 4-12 ("If it is being heard upstairs, things are going to be

7

worse."); Morgan Tr. at 18:11-25, 40:3-41:15, 97:4-98:10. In addition, Defendant Porter stated in his deposition that he avoided hearing allegations of sexual misconduct so that he could avoid a duty to report such incidents. Porter Tr., Dkt. No. 170-6, at 76:17-77:3. The Ryan Report also concludes that the investigative failures it outlined above and failure to discipline those accused of sexual assault encourages further misconduct by "feed[ing] into the DOC culture where the correctional staff know that there is a minimal probability that the City will discover sexual misconduct, and that if discovered, the misconduct would not be effectively investigated so that, at conclusion, punishment would be unlikely." Ryan Report at 42.

Defendants primarily respond to the Plaintiff's evidence by arguing that the Ryan Report should be disregarded by the Court. The Court does not find those arguments compelling. At the outset, the Court notes that the Defendants have not filed a *Daubert* motion to challenge the Ryan Report and instead rely only on broad arguments against the report raised in their reply brief in support of summary judgment. The Defendants first argue that the report is unsworn and cannot be considered on a motion for summary judgment. D. Reply, Dkt. No. 179, at 4. While this is true, the Plaintiff has since filed an affidavit of Ryan swearing to his expert opinions. Ryan Affidavit, Dkt. No. 180-1. While Defendants object that it is untimely, Dkt. No. 183, the Court will follow the longstanding practice of allowing a party to cure the defect of an unsworn expert opinion submitted in connection with a motion for summary judgment by subsequently filing an affidavit. *See New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 86 n.5 (S.D.N.Y. 2015); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, No. 01-cv-1974 (NAM) (DEP), 2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007) (collecting cases). The Plaintiff's motion for leave to file an affidavit of Timothy Ryan is therefore granted.

Defendants also argue that the Ryan Report relies on inadmissible hearsay and makes

8

improper legal conclusions. D. Reply at 4-6. Defendants do not identify particular excerpts of the Ryan Report that are inadmissible hearsay but do identify seven statements that they believe are improper legal conclusions. D. Reply at 5-6. At no point do they argue that the *entire* report would be inadmissible, and the seven statements identified as impermissible conclusions are not dispositive of the analysis above. As a result, even if the Court agrees with the Defendants' argument, this at most would warrant the redacting of certain portions of the Ryan Report rather than the Court refusing to consider the entire report on the motion for summary judgment. The Court thus finds the admissible portions of the report to be valid evidence for purposes of resolving this motion for summary judgment.

Finally, Defendants argue that the Ryan Report is irrelevant because it does not specifically allege how the deficiencies it finds in the City's practices caused the Plaintiff's injuries. D. Reply at 6. As stated above, however, applying the summary judgment standard, a reasonable juror could conclude that the failures to investigate and discipline officers accused of sexual assault that are described in the Ryan Report caused Defendants Porter and Williams to determine that they would not be investigated or punished for participating in the sexual assault of Doe. In addition, the Plaintiff has sworn that the Defendants made comments to her stating that she would never be believed, and a reasonable juror could conclude based on such comments that the investigative and disciplinary failures identified in the Ryan Report were the moving force behind Defendants' alleged sexual assault of the Plaintiff.

For the above-stated reasons, the Defendants' motion for summary judgment is denied on the Plaintiff's *Monell* claim regarding inadequate investigation and discipline.

### 2. Defendants Are Entitled to Summary Judgment Regarding Inadequate Hiring

The Plaintiff further alleges that the City of New York was deliberately indifferent in its

hiring of RMSC staff. The Court concludes that, even accepting all inferences in favor of the non-moving party, no reasonable juror could find for the Plaintiff on this claim and that Defendants are entitled to summary judgment.

To sustain a claim for deliberate indifference in the hiring process, "[a] plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 411 (1997). In other words, "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" *Id.* While the Second Circuit has not explicitly considered whether a pattern or practice of deficient hiring – rather than a "single incident" claim like the one in *Bryan County* – can sustain a *Monell* claim, the First Circuit has concluded that such a claim may be possible but that "[a] pattern of previous bad hiring decisions leading to constitutional violations (perhaps of the same type as the one at issue) would likely be necessary." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 31 (1st Cir. 2005).

The Plaintiff's argument as to inadequate hiring is that the City's hiring and screening procedures "failed to eliminate candidates who could not be trusted to abide by DOC rules that protect inmates, to report misconduct by their fellow correction officers and to avoid the significant corrupting opportunities available in a prison setting." Opp. at 40. In support of this, the Plaintiff points to the Ryan Report's conclusion that up to one-third of Department of Corrections personnel had a previous history of domestic violence or improper relationships with incarcerated individuals. Ryan Report at 28-29. However, the Plaintiff does not allege that there

10

were any such incidents in Porter's or Williams' background. As a result, no reasonable juror could conclude, based on the evidence adduced by the Plaintiff that the City's alleged inadequate hiring practices *caused* the Plaintiff's injuries.

Perhaps recognizing this shortcoming in the evidence presented, the Plaintiff argues that the City was deliberately indifferent to the risk that it was hiring correction officers "susceptib[le] to corruption once on the job." P. Opp. at 41. The Court concludes, however, that even viewing this evidence in the light most favorable to the Plaintiff, she has failed to demonstrate that a "plainly obvious consequence," *Bryan Cty.*, 520 U.S. at 411, of hiring employees who are generally susceptible to corruption includes the rape of inmates in general and of the Plaintiff in particular. As a result, even if the Court assumes that a challenge to a general municipal hiring policy is sufficient to sustain a *Monell* claim, such a claim fails in the present case because the Plaintiff's claim does not meet the stringent standard for hiring claims set forth in *Bryan County*.

Thus, Defendants' motion for summary judgment is granted insofar as the Plaintiff's *Monell* claim seeks to hold the City liable for its inadequate hiring practices.

### 3. Defendants Are Entitled to Summary Judgment Regarding Inadequate Monitoring

In her Third Amended Complaint, the Plaintiff alleges that the City failed to properly monitor the movement of female inmates, which allowed the individual Defendants to transport her to an abandoned portion of the building and hold her there while sexually abusing her. TAC ¶ 284. Defendants argue in support of their motion for summary judgment that it maintains "numerous handwritten and computerized records" of inmate movement and that, in all of the logbooks and records turned over to the Plaintiff in this case, "[t]here is no evidence in the record that any records were falsified or tampered with." D. Brief in Support ("Support"), Dkt. No.

162, at 15. Defendants also argue that the need for further monitoring was not "obvious," as required to hold a municipality liable under *Monell*. *See Amnesty Am.*, 361 F.3d at 127.

In her opposition to summary judgment, the Plaintiff seemingly does not respond to any of the Defendants' arguments. She repeatedly mentions monitoring, but only in passing and without explaining the particular monitoring failures that form the basis of her *Monell* claim. *See* Opp. at 5 ("In 2013, apart from areas under video monitoring, the City had no technology to record the location of correction officers in real time."); *id.* at 19 (relaying a former inmate's testimony that "DOC staff used violence particularly in locations that were not monitored by cameras"); *id.* at 35 (summarizing *Cash v. County of Erie*, in which the Second Circuit reinstated a *Monell* jury award based on a municipal policy of letting male COs supervise female inmates unsupervised); *id.* at 37 (summarizing *Vann v. City of New York*). Although the Plaintiff states that one portion of her argument pertains to "inadequate hiring and monitoring," P. Opp. at 40, her memorandum actually only discusses the inadequacies of the City's hiring practices with no marshaling of evidence as to how the City failed to monitor its employees or inmates, or how such deficiencies caused her injuries. As a result, the Court concludes that the Plaintiff has failed to raise a genuine issue of material fact that would preclude summary judgment and that the Defendants are entitled to summary judgment regarding any alleged failure to monitor.

Thus, Defendants' motion for summary judgment is granted insofar as the Plaintiff's *Monell* claim is based on inadequate monitoring.

### C. Summary Judgment Is Denied on Plaintiff's Negligent Hiring and Supervision Claim

In her thirty-first claim for relief in the Third Amended Complaint, the Plaintiff alleges that the City owed her a duty of care to prevent her injury and breached this duty by failing to adequately supervise its employees. TAC ¶¶ 259-64. In her opposition, the Plaintiff narrows

this claim to the City's alleged duty to adequately supervise Defendant Porter based on his prior uses of force and allegations of sexual misconduct. P. Opp. at 43-47. The Court concludes that a reasonable juror could conclude based on the evidence presented that the City was negligent in its supervision of Defendant Porter and that this negligence was the direct and proximate cause of Porter's alleged sexual assault of Doe.

Under New York law, a plaintiff alleging negligence must show that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995). "To state a claim for negligent supervision or retention under New York law," in addition to the standard elements of negligence, a plaintiff must also show "[i] that the tort-feasor and the defendant were in an employee-employer relationship; [ii] that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence; and [iii] that the tort was committed on the employer's premises or with the employer's chattels." *Zeak v. United States*, No. 11-cv-4253 (KPF), 2015 WL 246340, at *3 (S.D.N.Y. Jan. 20, 2015) (alterations in original) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). A claim for negligent supervision or retention "arises when an employer places an employee in a position to cause *foreseeable* harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee." *Doe v. Montefiore Med. Ctr.*, No. 12-cv-686 (CM), 2013 WL 624688, at *3 (S.D.N.Y. Feb. 19, 2013) (quoting *Vione v. Tewell*, 820 N.Y.S.2d 682, 87 (Sup. Ct. 2006)). "Actual or constructive notice to the [employer] of prior similar conduct generally is required." *Neveah T. v. City of New York*, 18 N.Y.S.3d 415, 418 (App. Div. 2015) (citation omitted).

If complaints have been made against an employee in the past, the employer is on notice about the complained-of behavior. *Williams v. Muhammad's Holy Temple of Islam, Inc.*, No. 00-cv-1251 (RML), 2006 WL 297448, at *6 (E.D.N.Y. Feb. 8, 2006) ("[N]otice of an employee's propensity to engage in injurious conduct is highly relevant to a claim for negligent supervision or retention."); *Tainsky v. Clarins USA, Inc.*, 363 F. Supp. 2d 578, 586 (S.D.N.Y. 2005) (denying summary judgment on negligent supervision claim); *Timothy Mc. v. Beacon City Sch. Dist.*, 7 N.Y.S.3d 348, 351 (App. Div. 2015); *Naveah T.*, 18 N.Y.S.3d at 418. New York courts have rejected the argument that state or municipal governments were not on notice of their employees' propensity for injurious conduct when the complaints were "unsubstantiated." *Patterson v. State*, No. 121681, 2014 WL 4548437, at *10-*11 (N.Y. Ct. Cl. Aug. 29, 2014); *Morris v. State*, No. 100694-A, 2012 WL 966945, at *5 (N.Y. Ct. Cl. Mar. 6, 2012) (collecting cases). An employer does not need to have notice of an employee's propensity "to behave in the exact manner in which he behaved with" a plaintiff in order for liability to attach, "only notice of [the employee's] propensity for that 'sort of behavior.'" *Anna O. v. State*, No. 114085, 2011 WL 6957587, at *7 (N.Y. Ct. Cl. Oct. 19, 2011) (citation omitted); *see also Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-cv-15509 (WWE), 2011 WL 1079944, at *10 (S.D.N.Y. Mar. 24, 2011) (denying summary judgment on a negligent supervision claim where a social studies teacher had held a female student in a way that made her uncomfortable at some point prior to allegedly raping another female student). Even a single previous report of misconduct may be sufficient to create an issue of fact regardless of the severity of the previous incident. *See Bliss*, 2011 WL 1079944, at *10; *see also Doe v. Chenango Valley Cent. High Sch. Dist.*, 938 N.Y.S.2d 360, 362 (App. Div. 2012) (denying summary judgment on a negligent supervision claim where a bus driver had allegedly pulled down his pants to reveal an adult diaper to children eight months

14

before allegedly sexually abusing two children during a field trip).

Defendants move for summary judgment arguing that the City was not on notice of any propensity for bad conduct that Defendant Porter possessed. However, the Plaintiff has adduced evidence raising a genuine issue of material fact as to whether the City knew or should have known about Defendant Porter's alleged propensity to commit sexual abuse against female inmates. First, the Plaintiff has presented evidence of an October 2012 sexual assault allegation against Defendant Porter. On October 31, 2012, Defendant Porter entered a different female inmate's cell after the inmate broke the glass window to her cell. Use of Force DOC Records, Dkt. No. 170-11, at DEF 6144-46. According to the tour commander's report, Defendant Porter used upper body control holds and pinned the inmate to the bed and held her there until the probe team arrived. Use of Force DOC Records at DEF 6145-46, 6160-61. ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ Sexual Assault DOC Records, Dkt. No. 170-9, at DEF 0004251-52. ███████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████ Sexual Assault DOC Records at DEF 00004253. The Department of Corrections investigated the incident and determined that it was "unsubstantiated." Sexual Assault DOC Records at DEF 00004250. Then-Warden Mirabel withheld the allegation from Defendant Porter's personnel file so that other supervisory staff could not see it. Mirabel Tr., Dkt. No. 170-3, at 113:22-115:22, 135:6-136:20, 137:19-138:6.

Second, the Plaintiff has presented evidence of a June 2012 charge against Porter for using excessive force and providing a description of the incident that the RMSC Warden found inconsistent with video footage of the event. DOC Records, Dkt. No. 170-8, at DEF 3036, 3183-

85; Mirabel Tr. at 195:16-196:2, 203:8-15. Then-Warden Mirabel filed a Memorandum of Complaint against Defendant Porter for "striking [the inmate] too many times when control holds would have been adequate" because, as Warden Mirabel described in her deposition, "We got an inmate here that's in restraints and they're still using the force on her." Mirabel Tr. at 195:21-196:8; DOC Records at DEF 3183-84, 3187-88. A Department of Corrections investigator likewise concluded that video footage of the incident showed Defendant Porter "utilizing unnecessary force when he struck [the inmate] multiple times in the facial area." DOC Records at DEF 2985. Despite these conclusions, however, the Department of Corrections never imposed any penalty on Defendant Porter and Then-Warden Mirabel never adjusted Defendant Porter's assignment to prevent him from having physical interaction with inmates. Porter Tr. at 157:2-12. The parties dispute whether the charge was resolved prior to Defendant Porter's retirement. *See* P. Opp. at 11. Nevertheless, Defendant Porter retired with a "good guy" letter to show prospective employers and allow him to retain his firearm. *See* Porter Tr. at 146:18-22, 147:6-149:8. While this incident did not involve sexual abuse, a reasonable juror could conclude that the incident put the City on notice of Porter's propensity to commit serious abuse against female inmates. *See Doe*, 938 N.Y.S.2d at 362; *Anna O.*, 2011 WL 6957587, at *7.

Based on these two incidents, a reasonable juror could conclude that the City had actual or constructive notice that Defendant Porter had a propensity to seriously abuse or sexually assault female inmates. *See Bliss*, 2011 WL 1079944, at *10. As a result, summary judgment is denied on this claim.

In their reply brief, Defendants assert for the first time that the City should be shielded by governmental immunity. D. Reply at 12. The "standard rule" in this Circuit is that "arguments may not be made for the first time in a reply brief." *Manon v. Pons*, 131 F. Supp. 3d 219, 238

16

(S.D.N.Y. 2015) (quoting *Simpson v. City of New York*, 793 F.3d 259, 264 (2d Cir. 2015)). As a result, district courts routinely conclude that arguments not made until a reply brief are waived. *See id.* at 238-39 (collecting cases). In *Manon*, a court in this district concluded that the Defendants had not addressed a Plaintiff's substantive due process claim until their reply brief. *Id.* at 238. As a result, the court concluded that "although the Court is skeptical that the Plaintiff has a viable claim, Defendants are not entitled to summary judgment as to Manon's fifth cause of action for violations of her substantive due process rights." *Id.* at 239.

Applying the standard rule, the Court will not consider the Defendants' new argument in their reply brief regarding governmental immunity. Nothing in the Defendants' opening brief references governmental immunity in any way, and it is therefore not appropriate for the Court to consider the argument. That is particularly the case where, as here, the Plaintiff has had no opportunity to respond to the claim of governmental immunity and the Defendants have provided only two sentences asserting the argument – far too little discussion for the Court to rule on the issue. As a result, the Court concludes that Defendants have waived this argument for purposes of this summary judgment motion.

### D. Defendants Are Entitled to Summary Judgment on Plaintiff's IIED Claims

In her Third Amended Complaint, the Plaintiff brings claims against Defendants Porter and Williams and several John Doe officers for intentional infliction of emotional distress ("IIED"). TAC ¶¶ 114-17, 172-75. The Court concludes that Defendants are entitled to summary judgment on these claim.

Under New York law, IIED "is a theory of recovery that is to be invoked only as a last resort, when traditional tort remedies are unavailable." *Thomas v. County of Putnam*, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003). "Accordingly, '[n]o intentional infliction of emotional

distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'" *Id.* (alteration in original) (quoting *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)).

Here, the conduct of Defendants Porter and Williams clearly fall within the ambit of traditional tort law. The Third Amended Complaint includes a claim against both for assault and battery under New York Law. TAC ¶¶ 107-13. In her opposition to summary judgment, the Plaintiff does not delineate any conduct by the individual Defendants that forms the basis of her IIED claims that would not also be considered an assault or battery under New York law. Because the Plaintiff has failed to state a genuine issue of material fact that would preclude summary judgment on her IIED claims, the motion for summary judgment is granted on Claims 3 and 14.

## IV. Conclusion

Defendants' motion for partial summary judgment is granted as to Claims 2, 3, 13, 14, 21, 22, and the portions of Claim 32 related to training its correction officers specifically as to sexual safety, inadequate hiring practices, and inadequate monitoring of inmates. The motion for partial summary judgment is denied on the remaining claims. This resolves docket number 160. Plaintiff's motion for leave to file an affidavit of Timothy Ryan is granted. This resolves docket number 180.

A scheduling conference is hereby set for November 7, 2018 at 10 a.m. In advance of that conference, the parties shall confer and determine several mutually agreeable dates for trial and a proposed schedule for the filing of pre-trial materials. The parties shall also confer regarding settlement and indicate to the Court in advance of the November 7 conference whether they seek a referral to either the Magistrate Judge or the Court-annexed Mediation Program. The

parties shall file a status letter with the Court by October 31, 2018 regarding proposed dates for trial and whether a settlement referral is sought.

Because this Memorandum Opinion and Order may reference information that the parties seek to maintain under seal, the Court will file it under TEMPORARY SEAL. The parties are directed to meet and confer and submit within 10 days any proposed redactions for the version of this Memorandum Opinion and Order to be filed on the public docket. If the parties are unable to reach agreement, they may set forth their respective positions in letter briefs not to exceed three pages in length. Although the Court will publicly docket an order announcing its bottom-line conclusion, it will refrain from publicly docketing this Memorandum Opinion and Order until it has ruled on the proposed redactions.

SO ORDERED.

Dated: September 28, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge